UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-394-DLB

SHARON RUCKER,                                                                          PLAINTIFF,

V.                   **MAGISTRATE JUDGE'S REPORT**
                               **AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                        DEFENDANT.

### I. INTRODUCTION

Plaintiff, Sharon Mae Rucker, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying her application for Supplemental Security Income ["SSI"]. [R. 2]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 15]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Plaintiff's Motion for Summary Judgment [R. 11] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 14] be granted, and Judgment be entered affirming the final decision of the Commissioner.

### II. FACTS & PROCEDURAL HISTORY

The Plaintiff was born in 1955 and was 45 years old at the alleged onset date of her disability. [Tr. 20]. She is unmarried and lives with her boyfriend. [Tr. 100; 407; 436]. The Plaintiff received her GED in 1983, and has no additional education or specialized training. [Tr. 128]. She lists her employment experience as follows: a nurses aide at a nursing home from 1974-1977 [Id.], a deli

worker at a grocery store from 1994 to 1995 [Id.], a house keeper at a nursing home from 1997-1998 [Id.], and a residential aide at a nursing home from 2000-2001 [Id.].

The Plaintiff claims that her disability began on June 15, 2001. [Id.]. In the Disability Report, Form SSA-3368, the Plaintiff claimed that she was unable to work as a result of whiplash, back pain, osteoporosis, nerves, and depression. [Tr. 123]. She also complains of arthritis in the hands and carpel tunnel syndrome, which she claims causes her to drop things. [Tr. 406; 412; 453]. The Plaintiff has a history of seizures. [Tr. 506]. She reports being independent in money management, shopping, meal preparation, and medication management. [Tr. 409].

As a result of her impairments, the Plaintiff filed for disability benefits on September 28, 2004. [Tr. 100-105]. Her claims were initially denied on January 13, 2005 [Tr. 86], and were denied upon reconsideration on February 23, 2005 [Tr. 398]. Following the denial, she properly requested a hearing in front of an Administrative Law Judge ["ALJ"]. [Tr. 98]. On October 27, 2005 a hearing was held in front of ALJ Frank Letchworth in London, Kentucky. [Tr. 25]. The Plaintiff was present and represented by counsel, Paul Baker. [Id.]. During the hearing, the ALJ sought testimony from the Plaintiff and vocational expert Dr. Bill Ellis. [Tr. 5; 34].

The ALJ ruled against the Plaintiff in a written decision dated February 8, 2006. [Tr. 15-27]. In determining the Plaintiff's residual functional capacity, he rejected the opinion of her treating physician, Dr. Arden M. Acob, which placed her at a significantly limited range of sedentary work:

> "...I do not find the evidence of record supportive of Dr. Acob's opinion. His assessment is not supported by the clinical and diagnostic record which shows nothing more than a slight narrowing of the disc space at C5/6. The claimant's lumbar spine is totally normal and her seizure disorder is fully controlled. Thus, there is no basis for such extreme exertional limitations."

[Tr. 16]. The Plaintiff filed an appeal with the U.S. District Court for the Eastern District of

Kentucky, claiming that the ALJ improperly rejected Dr. Acob's opinion. On January 31, 2007, the U.S. District Court for the Eastern District of Kentucky reversed [06-196-GWU], finding that her treating physician's opinion warranted further consideration:

> "There is a problem with relying on the medical reviewers to discount the treating physician's opinion. Neither medical reviewer actually saw Acob's opinion.
>
> Moreover, one of the treating physician's progress notes while somewhat routine do consistently document recent muscle tenderness, hyperactive reflexes 'with pathological spread' and 4/5 finger abduction. One of Acob's forms very specifically referred to 'degenerative disc disease, prominent at C5-C6 [and] mild changes of a similar nature at C6-C7.' These specifics represented more extensive disease than that credited by the ALJ, yet no followup was done to investigate the existence of absent test results as per 20 C.F.R. Section 404.1512(e). Additionally, there were new EMG/NCV ordered by Acob which yielded evidence of moderate median neuropathy.
>
> While Acob's assessment forms in all their parameters may not be supported by sufficient evidence to be binding, the above findings do appear to reasonably indicate greater restrictions in related upper extremity activities, such as handling, lifting or pushing/pulling."

[Tr. 482-83] (emphasis in original) (citations to record omitted). United States District Judge G. Wix Unthank remanded the case "for further consideration of Acob's information." [Tr. 483].

On remand, the ALJ ruled against the Plaintiff in a written decision dated August 17, 2007. [Tr. 404]. The ALJ found that she suffered from the combined severe impairments of: "C5-6 degenerative disc disease; a questionable seizure disorder; dysthymic disorder, not otherwise specified; and borderline intellectual functioning." [Tr. 406]. Despite these severe impairments, the ALJ found that "[t]he claimant does not have an impairment, or combination thereof, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I." [Tr. 410]. Continuing with his evaluation, the ALJ found that she has the residual functional capacity to:

3

> "perform medium work except medium work activity that requires no climbing of ropes, ladders or scaffolds; no overhead reaching; no exposure to vibration or extreme cold temperatures; and no more than occasional crawling, stooping or crouching. The claimant is also moderately limited in her ability to respond appropriately to work setting changes; perform at a consistent pace without an unreasonable number or length of rest periods; deal with the public; maintain attention and concentration; and carry out detailed instructions."

[Tr. 411]. The ALJ found that the Plaintiff was unable to perform any past relevant work, but that "considering [her] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." [Tr. 413-414]. Based on these findings, the ALJ determined that the Plaintiff did not suffer from a "disability" as defined by the Social Security Act. [Id.].

On November 13, 2007, the Plaintiff initiated the present action by filing a complaint in the United States District Court for the Eastern District of Kentucky. [R. 2]. In her Motion for Summary Judgment [R. 11], the Plaintiff claims that the ALJ's opinion should be reversed because he did not accord the proper weight to her treating physician's opinion and failed to include "never balancing" in the hypothetical questions to the vocational expert. [Id. at 2-3]. The Defendant-Commissioner responds that the ALJ's decision is supported by substantial evidence. [R. 14 at 4]. The parties having fully briefed the issues, this matter is ripe for adjudication.

### III.  STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted).

4

The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ. So long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision, would be appropriate in situations where the ALJ: ignores uncontested, compelling evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

To determine whether a claimant is "disabled" within the meaning of the Social Security Act, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. Step one examines the work activity of the claimant to determine whether she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). In step two, the ALJ determines whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe. Id. Step three examines whether the claimant's impairments

meet the criteria set forth in the regulations to categorize an individual as "disabled." Id. The fourth step examines whether the claimant retains any "residual functional capacity" and whether the claimant can return to her past relevant work. Id. Finally, if the claimant is unable to return to any past relevant work, it must be determined whether she has the residual functional capacity to do any other work. Id. The Sixth Circuit Court of Appeals has summarized the burdens of proof involved in this process as follows:

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry...the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003).

In the present case, the ALJ engaged in the sequential evaluation and determined that the Plaintiff had not been engaged in substantial gainful activity since June 15, 2001. [Tr. 406]. At the second step of the evaluation, he found that she suffered from the combined severe impairments of: "C5-6 degenerative disc disease; a questionable seizure disorder; dysthymic disorder; anxiety disorder, not otherwise specified; and borderline intellectual functioning." [Id.]. Despite these severe impairments, the ALJ found that the Plaintiff "does not have an impairment, or combination thereof, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 410]. Continuing with his evaluation, the ALJ found that she has the residual functional capacity to:

> "perform medium work except medium work activity that requires no climbing of ropes, ladders or scaffolds; no overhead reaching; no exposure to vibration or extreme cold temperatures; and no more than occasional crawling, stooping or crouching. The claimant is also moderately limited in her ability to respond

6

> appropriately to work setting changes; perform at a consistent pace without an unreasonable number or length of rest periods; deal with the public; maintain attention and concentration; and carry out detailed instructions."

[Tr. 411]. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. [Tr. 413]. At step five, he found that, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 414]. Based on these findings, the ALJ found that the Plaintiff did not suffer from a "disability" as defined by the Social Security Act. [Tr. 414-415].

As previously noted, the Plaintiff alleges two claims of error on appeal. First, she argues that the ALJ did not accord proper weight to the opinion of Dr. Acob, her treating physician. [R. 11 at 2-3]. Second, she argues that the ALJ erred by failing to include "never balancing" in the hypothetical questions to the vocational expert. [Id. at 3]. The Plaintiff's arguments will be addressed in turn.

**A.     The ALJ's Rejection of Dr. Acob's Opinion**

Pursuant to the "treating physician rule," an ALJ must give "greater weight" to the opinions of treating physicians than those of other physicians. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir. 1981). Such deference is only accorded, however, when the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." Gaskin v. Commissioner of Social Sec., 280 Fed.Appx. 472, 474 (6th Cir. 2008) (unpublished) (citing 20 C.F.R.§ 1527(d)(2)).

When the ALJ rejects the opinion of a treating physician, he must give "good reasons" for doing so. See Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). The SSA

regulations set forth certain factors the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the treating physician's opinion, (4) the consistency of the physician's opinion with the record as a whole, and (5) the specialization of the physician. 20 C.F.R.§ 1527(d)(2).  The Sixth Circuit Court of Appeals has explained that the reason-giving requirement serves two  purposes:

> "First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.  Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."

Rogers at 242-43.

In the case *sub judice*, the ALJ's rejection of the treating physician's opinion was supported by substantial evidence and complied with the reason-giving requirement.  In rejecting Dr. Acob's opinion, the ALJ focused on the third and fourth factors set forth above, supportability and consistency with the record.  For instance, with respect to the Plaintiff's complaints of arthritis in her hands and carpel tunnel syndrome, he noted that "while Dr. Acob's notes reference decreased range of motion in the wrists, consultative examiner Dr. Muffly observed in April 2007 that the claimant was able to remove her socks easily and rapidly without significant stiffness as well as passed a belt around her gown and tied it without difficulty." [Tr. 412]. The ALJ further noted that Dr. Muffly detected no decreased range of motion in the Plaintiff's hands or wrists.  [Id.].  He determined that the "objective findings certainly diminish the claimant's testimony that she constantly drops objects."  [Id.].

Likewise, the ALJ determined that the medical evidence did not substantiate the severity of back and neck pain which the Plaintiff alleged:

> "Lumbar x-rays showed no diagnostic abnormality, and cervical diagnostic studies showed only mild C5-6 narrowing (Exhibit B21F). While cervical range of motion has been consistently decreased, there is no evidence of any significant decrease in lumbar range of motion. Additionally, straight leg raising has been longitudinally negative, and physical examinations failed to elicit evidence of neurological deficits such as motor strength, reflex, or sensory compromise. I further note that there is no evidence of any neurosurgical, physical therapy or formal pain management treatment since July 19, 2003. Instead, the claimant has relied on prescription medications, with which Dr. Acob repeatedly noted that the claimant remained functional and was able to tolerate her pain."

[Id.]. Regarding the Plaintiff's allegation of depression, the ALJ noted that her longitudinal record did not corroborate the severity she alleged, and there was only evidence of a limited course of treatment at Comprehensive Care in 2006 and 2007. [Tr. 413].

Finally, in making his residual functional capacity determination, the ALJ summarized his reasons for disregarding Dr. Acob's opinion:

> "With respect to the claimant's physical functional capacity, I have carefully considered the District Court's directive that further consideration be given to Dr. Acob's medical source statement. In doing so, however, the Court acknowledged that such an opinion 'might not be supported by sufficient evidence.' Dr. Acob's October 2005 opinion placed the claimant at a significantly limited range of sedentary work. He then submitted an essentially identical opinion in July 2007. Each of these opinions attempts to cite "findings" that are in fact diagnoses, and upon careful review of the longitudinal record with significant weight given to the essentially benign findings generated by Dr. Muffly's April 2007 consultative examination, I find that the severity of restriction imposed by Dr. Acob is simply not supported by the entirety of the record. Consequently, I find that the overall record lacks new and material (*sic*) upon which to depart from the functional capacity assessment contained in the prior hearing decision."

[Tr. 413] (citations to exhibits omitted).

Having reviewed the record, the Court finds that substantial evidence supported the ALJ's

rejection of Dr. Acob's opinion, and that he complied with the reason-giving requirement of 20 C.F.R.§ 404.1527(d)(2). The ALJ articulated several reasons for disregarding Dr. Acob's opinion, specifically focusing on the lack of supportive evidence, as well as the evidence which contradicted the physician's assessment. Accordingly, Plaintiff's objection that the ALJ did not accord proper weight to the treating physician's opinion must fail.

**B.    The ALJ's Failure to Include "Never Balancing" In The Hypothetical Questions to the Vocational Expert**

The Plaintiff argues that the ALJ did not follow the U.S. District Court's "specific instructions," as he failed to include "never balancing" in the hypothetical questions to the vocational expert. [R. 11 at 3]. The Commissioner responds that the recent medical evidence supported his decision to not limit her ability to balance in the hypothetical questions. [R. 14 at 13].

The Court finds that the Plaintiff's claim lacks merit. First, contrary to her assertions, the U.S. District Court's Remand Order did not specifically direct the ALJ to include "never balancing" in his hypothetical questions to the vocational expert. Rather, it simply noted that one of the medical experts had indicated a need for "never balancing." [Tr. 482]. Moreover, it is well established that an ALJ's hypothetical questions "need only incorporate...those limitations which the ALJ has accepted as credible." Infantado v. Astru, 263 Fed.Appx. 469, 476-77 (6th Cir. 2008) (unpublished) (citing Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993). In the present case, the ALJ did not find the severity of neck and back pain alleged by the Plaintiff to be fully credible. Indeed, he noted that during an examination in April, 2007, "[s]he ambulated without evidence of limping; was able to fully squat and rise; and demonstrated *good balance* while standing on one leg at a time." [Tr. 407] (emphasis added). Thus, the ALJ's failure to include "never

10

balancing" in the hypothetical questions was not error.

## V. CONCLUSION

Therefore, for the reasons set forth above, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 11] be DENIED, the Defendant's Motion for Summary Judgment [R. 14] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed October 28, 2008.



Signed By:
*Edward B. Atkins* $\mathcal{EBA}$
**United States Magistrate Judge**